IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

ANTHONY ZAPPIN,

                Plaintiff,

v.                                        CIVIL ACTION NO.   2:21-cv-00119

RACHAEL L. FLETCHER CIPOLETTI, et al.,

                Defendants.

**MEMORANDUM OPINION AND ORDER**

The Court has reviewed the Plaintiff's *Amended Complaint* (Document 21), the Defendants' *Motion to Dismiss Amended Complaint* (Document 30), the *Memorandum of Law in Support of a Motion to Dismiss Amended Complaint* (Document 31), the *Plaintiff's Memorandum of Law in Opposition to Defendants' Motion to Dismiss* (Document 36), and the Defendants' *Reply to the Memorandum of Law in Opposition to Defendants' Motion to Dismiss* (Document 37).[1] For the reasons stated herein, the Court finds that the motion to dismiss should be granted.

The Plaintiff is proceeding pro se, and his pleadings will accordingly be liberally construed. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Fauconier v. Clarke*, 966 F.3d 265, 276 (4th Cir. 2020) (liberal construction particularly appropriate for pro-se civil rights complaints).

---

1 The Court also reviewed the initial complaint, a Proposed Findings and Recommendation (PF&R) submitted by Magistrate Judge Omar J. Aboulhosn, and objections filed by the Plaintiff. Because the Court permitted the Plaintiff to amend his complaint, the prior pleading is moot.

## FACTUAL ALLEGATIONS AND ARGUMENT[2]

The Plaintiff, Anthony Zappin, alleges that he was improperly disbarred in West Virginia through a reciprocal disciplinary proceeding. He named the following defendants: Rachael L. Fletcher Cipoletti, Justice Evan Jenkins, Justice Beth Walker, Justice Bill Wooton, Justice Tim Armstead, Justice John Hutchinson, Edythe Gaiser, Anne Lambright, and Gail Henderson Staples. Ms. Cipoletti is Chief Disciplinary Counsel for the West Virginia Lawyer Disciplinary Board. Justices Jenkins, Walker, Wooton, Armstead, and Hutchinson are the Justices of the West Virginia Supreme Court of Appeals. Ms. Gaiser is the Clerk of the Court for the West Virginia Supreme Court of Appeals. Ms. Lambright and Ms. Henderson Staples were members of the Hearing Panel Subcommittee that voted to impose reciprocal discipline on Mr. Zappin.

Mr. Zappin cites contentious family court litigation surrounding his divorce and child custody proceedings in New York as the origination of his issues with New York courts and his bar membership. He alleges that he sought custody of his newborn son after his then wife took the child to her father's home in Washington state. Mr. Zappin and his ex-wife both initiated assorted family law proceedings and both levied accusations of abuse. After initial filings in Washington, DC, Mr. Zappin's ex-wife moved to New York with the child, and Mr. Zappin filed a petition for divorce in New York. He asserts that Justice Deborah Kaplan, originally assigned to his case, committed a wide variety of legal errors to deliberately favor his ex-wife and damage his efforts to seek custody. In addition to Justice Kaplan's alleged bias, Mr. Zappin asserts that the attorney she appointed for the child was biased, unqualified, and billed at an excessive rate.

---

[2] The Plaintiff's amended complaint contains extensive argument and statements of legal positions, in addition to factual allegations. The Court has recounted both in this section, in summarized form.

2

Because of the expenses associated with the proceedings, including high costs imposed on him for supervised visitation, he chose to forego legal counsel and proceed pro se. He filed a separate action against Justice Kaplan and a court security officer after he was detained following a conference in April 2015. Justice Kaplan later moved to an administrative position, and Mr. Zappin's divorce and child custody case was transferred to Justice Matthew Cooper on July 22, 2015. Justice Cooper imposed sanctions against Mr. Zappin on September 22, 2015, based on a request made in a reply brief by the Attorney for the Child, without giving Mr. Zappin sufficient notice of the possibility of sanctions. He alleges that the decisions to impose sanctions contained factual errors and referenced Justice Kaplan, which he construed as indicating bias.

Mr. Zappin lost his job at a law firm and was unable to hire an attorney for his child custody hearing. The child custody hearing lasted thirteen days, ending on December 21, 2015. Mr. Zappin asserts that Justice Cooper improperly excluded evidence that would have been favorable to him. On February 16, 2016, Justice Cooper issued an opinion that included discussion of Mr. Zappin's misconduct, as well as other findings Mr. Zappin alleges to be erroneous. Mr. Zappin appealed to the First Department. The First Department also heard a Collateral Estoppel Petition filed by the New York Attorney General, requesting that Mr. Zappin be found guilty of attorney misconduct based on the findings in Justice Cooper's custody opinion. He asserts procedural deficiencies in the handling of the Collateral Estoppel Petition, which was granted without an in-person hearing or new factual findings and contends that the timing of the custody appeal and attorney misconduct proceedings prejudiced him because he chose to remain silent in the sanctions proceeding to better preserve his position for the custody proceedings. A sanctions hearing was held in December 2016, and in August 2016, the referee recommended that Mr. Zappin be

disbarred. The First Department adopted that recommendation in an opinion issued on March 8, 2018. He alleges that he was not given an opportunity to contest some assertions of misconduct that were not contained in the Collateral Estoppel Petition, and the remaining findings rested on collateral estoppel based on Justice Cooper's custody opinion.

Mr. Zappin notified the West Virginia Bar of his New York disbarment in March 2018, and disciplinary counsel Rachel Cipoletti filed a petition seeking reciprocal discipline and disbarment, without conducting an independent investigation. In a March 2019 hearing before the Hearing Panel Subcommittee, he presented evidence that the New York proceeding did not comport with due process, as well as evidence seeking to refute Justice Cooper's factual findings that led to the New York disciplinary proceeding. In July 2020, the Hearing Panel Subcommittee issued a report recommending that Mr. Zappin be disbarred. He appealed, and the West Virginia Supreme Court of Appeals held arguments on January 27, 2021. On February 16, 2021, the West Virginia Supreme Court entered an opinion imposing reciprocal discipline and directing that Mr. Zappin be disbarred.

Mr. Zappin asserts that Ms. Cipoletti incorrectly stated that he had received a hearing on the merits for the disciplinary proceeding in New York. He further asserts that she engaged in various forms of misconduct by making false allegations, including allegations that were uncharged and without notice, failing to turn over exculpatory evidence, contacting him on social media, failing to conduct a proper investigation, disparaging him, and threatening to bring additional baseless charges. The New York courts relied on Justice Cooper's factual findings rather than holding a hearing on the merits as to the misconduct, and the West Virginia courts failed to address his procedural complaints. He contends that Ms. Cipoletti "effectively"

4

conceded that the factual findings relied upon in New York were infirm and that he was not afforded due process in the New York disciplinary proceedings because she did not rebut his evidence and arguments. (Am. Compl. at ¶ 66.) The Amended Complaint contains a lengthy list of allegedly erroneous factual findings from the New York proceedings. It also details the various points at which he alleges he did not receive due process, primarily involving lack of notice of allegations and lack of an opportunity to present evidence and argument in his defense.

Mr. Zappin contends that the treatment of his case established rules or policies, subject to facial constitutional challenges, as follows:

- that "reciprocal discipline may be imposed on an attorney despite the fact that the attorney did not receive a hearing on the merits before the disciplinary authority in the foreign jurisdiction;"

- that "a sanction hearing (i.e., sentencing hearing) without a hearing on the merits and with a summary determination of guilt is sufficient due process to impose reciprocal discipline;"

- that the Defendants "may knowingly use fabricated and falsified evidence to pursue and impose reciprocal discipline on an attorney;"

- "that reciprocal discipline may be imposed on an attorney despite the fact that the evidence used in the foreign jurisdiction to obtain discipline against the attorney was fabricated and falsified;"

- that the Lawyer Disciplinary Board can "use uncharged and unnoticed allegations of misconduct as a basis for requesting attorney discipline;"

- that the Lawyer Disciplinary Board may "pursue reciprocal discipline for alleged misconduct even where the alleged misconduct was speech protected by the First Amendment;"

- and to "pursue reciprocal discipline despite the fact that the findings in the foreign jurisdiction were rendered under a lower

5

>> evidentiary standard and in a proceeding without the same Due Process safeguards as would otherwise have been afforded in a proceeding before a disciplinary authority."

(*Id.* at ¶ 135 – 159.)

He alleges violation of his Fourteenth Amendment due process rights based on alleged deficiencies in West Virginia's disciplinary process as applied to his case and seeks relief pursuant to 42 U.S.C. §1983 in Count One. In Count Two, he alleges that the Defendants violated his First Amendment rights by imposing attorney discipline based in part on protected speech and seeks relief pursuant to 42 U.S.C. § 1983. In Count Three, he alleges violation of his Fourteenth Amendment due process rights based on use of reciprocal discipline given the allegedly deficient procedures applied in New York and seeks relief pursuant to 42 U.S.C. §1983. He requests declaratory judgment that the policies, procedures, and rules applied to the disciplinary proceedings in both West Virginia and New York were facially unconstitutional, as well as fees and costs.

## STANDARD OF REVIEW

A motion to dismiss pursuant to Rule 12(b)(1) raises the fundamental question of whether a court is competent to hear and adjudicate the claims brought before it. "In contrast to its treatment of disputed issues of fact when considering a Rule 12(b)(6) motion, a court asked to dismiss for lack of jurisdiction may resolve factual disputes to determine the proper disposition of the motion." *Thigpen v. United States*, 800 F.2d 393, 396 (4th Cir. 1986) *rejected on other grounds, Sheridan v. United States,* 487 U.S. 392 (1988) (but explaining that a court should accept the allegations in the complaint as true when presented with a facial attack that argues insufficiency of the allegations in the complaint). Reasonable discovery may be necessary to permit the

6

plaintiff to produce the facts and evidence necessary to support their jurisdictional allegations. *Id.* The plaintiff has the burden of proving that subject matter jurisdiction exists. *See Richmond, Fredericksburg & Potomac R. Co. v. United States,* 945 F.2d 765, 768 (4th Cir.1991). Dismissal for lack of subject matter jurisdiction is proper only if there is no dispute regarding the material jurisdictional facts and the moving party is entitled to prevail as a matter of law. *Evans v. B.F. Perkins Co., a Div. of Standex Int'l Corp.*, 166 F.3d 642, 647 (4th Cir. 1999).

## DISCUSSION

The Defendants move to dismiss for lack of jurisdiction, citing the *Rooker-Feldman* doctrine. They argue that the Plaintiff asks the Court to sit in review of a state court decision, essentially seeking to appeal the West Virginia Supreme Court's decision to a federal district court. They contend that the issues presented here were litigated in the West Virginia disciplinary proceedings, and the sole avenue for relief from the state court rulings is an appeal to the United States Supreme Court. The Defendants next urge the Court to reject the Plaintiff's effort to recast his complaints regarding the treatment of his case as facial challenges to policies, rules, or procedures. They argue that what he describes as rules, practices, or procedures "are either collateral attacks on the New York civil and disciplinary proceedings or an appeal of the decision of the Supreme Court of Appeals of West Virginia to this Court," and note that the same effort to frame challenges to the outcome of the state court proceeding as facial challenges to policies, rules, or procedures was rejected in New York. (Def.s' Mem. at 15.) Therefore, they argue that the Court should dismiss for lack of jurisdiction.

The Plaintiff argues that the opinion in his case established precedent, and therefore should be read to state rules, policies, and procedures subject to facial challenge. He asserts that the

7

*Rooker-Feldman* doctrine is not applicable because he "is not complaining of any injury caused by the West Virginia Supreme Court of Appeals decision in *LDB v. Zappin*" but instead "complains of injuries caused by the policies, rules and procedures employed by Defendants during the *LDB v. Zappin* reciprocal disciplinary proceeding." (Pl.'s Resp. at 6–7.) He contends that he is challenging the procedures employed in *LDB v. Zappin*, and that claims related to the constitutionality of the process are not barred by *Rooker-Feldman*. He further argues that *res judicata* is not applicable because he had no opportunity to present his §1983 claim in the state disciplinary proceeding.

The *Rooker-Feldman* doctrine is derived from two Supreme Court cases. In *Rooker*, the Supreme Court explained that lower federal courts could not "entertain a proceeding to reverse or modify the judgment for errors" from a state court decision, because to "do so would be an exercise of appellate jurisdiction" and "[t]he jurisdiction possessed by the District Court is strictly original." *Rooker v. Fid. Tr. Co.*, 263 U.S. 413, 416 (1923). In *Feldman*, the Supreme Court held that "a United States District Court has no authority to review final judgments of a state court in judicial proceedings," as "[r]eview of such judgments may be had only in this Court." *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462, 482 (1983).

"The *Rooker–Feldman* doctrine bars consideration not only of issues actually presented to and decided by a state court, but also of constitutional claims that are 'inextricably intertwined with' questions ruled upon by a state court, as when success on the federal claim depends upon a determination 'that the state court wrongly decided the issues before it.'" *Plyler v. Moore*, 129 F.3d 728, 731 (4th Cir. 1997) (quoting *Charchenko v. City of Stillwater,* 47 F.3d 981, 983 (8th Cir.1995)). The Supreme Court has recently emphasized that "*Rooker-Feldman*…is a narrow

doctrine, confined to 'cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments.'" *Lance v. Dennis*, 546 U.S. 459, 464 (2006) (quoting *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005)).

In *Feldman*, applicants to the D.C. bar unsuccessfully sought waiver of a rule requiring graduation from an accredited law school. *D.C. Ct. of Appeals v. Feldman*, 460 U.S. 462 (1983). They challenged the D.C. Court of Appeals' decision in the United States District Court, which found that it lacked jurisdiction to consider the challenge. *Id.* The Supreme Court held that the federal district court lacked jurisdiction "to the extent that [the applicants] sought review in the District Court of the District of Columbia Court of Appeals' denial of their petitions for waiver," but found that the "District Court did have subject matter jurisdiction" of "a general challenge to the constitutionality of Rule 46 I(b)(3)," the rule requiring graduation from an accredited law school. *Id.* at 482–84. The Court explained that "state supreme courts may act in a non-judicial capacity in promulgating rules regulating the bar," and "general challenges to state bar admission rules" may be subject to challenge in federal court, while "claims that a state court has unlawfully denied a particular applicant admission" are not. *Id.* at 485.

However, the Supreme Court was quite clear that federal district courts "do not have jurisdiction…over challenges to state court decisions in particular cases arising out of judicial proceedings even if those challenges allege that the state court's action was unconstitutional." *Id.* at 486. Mr. Zappin asks this Court to do precisely what the Supreme Court has said it may not: consider his challenge to the West Virginia Supreme Court of Appeals decision regarding his bar membership. His attempt to construe the opinion issued in his case as a series of rules, practices,

9

or procedures is unavailing. A judicial opinion ruling on the factual and legal contentions presented in a specific case is, of course, judicial in nature. None of his challenges relate to generally applicable rules governing attorney discipline that were enacted through a legislative or rule-making function.[3] Therefore, the Court finds that the motion to dismiss for lack of subject matter jurisdiction must be granted.

## CONCLUSION

Wherefore, after thorough review and careful consideration, the Court **ORDERS** that the Defendants' *Motion to Dismiss Amended Complaint* (Document 30) be **GRANTED** and that this matter be **DISMISSED** without prejudice for lack of jurisdiction. The Court further **ORDERS** that all pending motions be **TERMINATED as moot**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and to any unrepresented party.

ENTER: September 24, 2021

IRENE C. BERGER
UNITED STATES DISTRICT JUDGE
SOUTHERN DISTRICT OF WEST VIRGINIA

---

[3] The Court notes that, even as the Plaintiff asserts that the findings of misconduct were all in error, his litigation style in this matter hardly represents the standard of conduct expected from attorneys in West Virginia. His objections to the PF&R, recommending dismissal of his original complaint, began by suggesting that the Magistrate Judge was influenced by local and state politics and the PF&R represented an attempt to "protect or cover-up for corrupt state court officials and judicial officers." (Pl.'s Obj. at 2) (Document 17.) Attacking the integrity of Court and other officials rather than simply advocating for a favorable outcome, based on a legal position, appears to be consistent with the type of behavior that led to Mr. Zappin's New York disciplinary proceedings.